IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

BETZ EVANS ASSOCIATES,      )
                            )
            Plaintiff,      )      TC-MD 110329C
                            )
      v.                    )
                            )
LANE COUNTY ASSESSOR,       )
                            )
            Defendant.      )      **DECISION**

Plaintiff appeals the real market value (RMV) of property identified as Account 1768504

for the 2010-11 tax year.  A telephone trial was held on June 4, 2012.  Plaintiff was represented

by Michael P. Evans (Evans), owner with duly executed power of attorney.  Defendant was

represented by Bryce Krehbiel (Krehbiel), Residential Appraiser, Lane County Department of

Assessment & Taxation.  Plaintiff's Exhibits 1 through 14 and Defendant's Exhibits A through T

were admitted without objection.

## I.  STATEMENT OF FACTS

The subject property is located in Springfield, Oregon, on a 9.5 acre parcel.  (Def's Exs

F, G.)  However, according to Krehbiel, the parcel is subject to a "code split."  The subject

property is on one account (the one under appeal), and the balance of the acreage is on another

property tax account.  (*See* Def's Ex F.)  Plaintiff's appeal concerns only the 5 acre portion with

a 4,233-square-foot home.  (*See id.*)

The home has three bedrooms, three full baths, and two half baths.  (Def's Ex I.)

According to the listing (submitted as an exhibit by both parties), the home was built for the Tour

of Homes with amenities including a "geothermal heating & cooling system" and "[s]pectacular

views" of the mountains and valley from every window of the home.  The listing further

describes the home as a "luxury home" with "unique craftsmanship" and a "main level Master Suite [that] boasts a luxurious bathroom that blends black walnut & marble." (Ptf's Ex 10; Def's Ex I at 1.) The listing states that "[t]he generous sized dream kitchen has slab granite counters & black walnut cabinets, raised eating bar, & a large island." (Def's Ex I at 1.) Photographs of the home show that there is also an attached three-car garage, accessed by a single garage door and a double garage door. (*Id*.)

Evans testified that the home was built in 2009. (*See* Def's Ex F.) The deeds submitted as part of Defendant's exhibits, coupled with testimony at trial, indicate that Plaintiff purchased a nearly 10-acre parcel on April 26, 2006, for $50,000. (Def's Ex J at 1.) On January 30, 2009, Plaintiff conveyed the land (presumably the 9.5 acres) to "River Valley Builders, Inc." (River Valley) for $50,000. (*Id*. at 3.)

Evans testified that he paid $714,000 to have River Valley build the house. River Valley then conveyed the subject property back to Plaintiff on June 25, 2010, for $763,800. (*Id*. at 6.) Evans testified that the home was on the market for over one year, and due to the nature of his past business relationship with River Valley and the parties' arrangement regarding the earlier sale of the subject land on which the home was built, "his" (Plaintiff is a separate legal entity owned by Evans) best option was to buy the home for $763,800 (the amount of the outstanding loan to River Valley). That purchase price is essentially the cumulative value of the earlier $50,000 sale of the land and the alleged $714,000 cost to build the home. Evans testified that he was to receive another $250,000 to $300,000 for the land if River Valley had successfully marketed the home.

The RMV on the assessment and tax rolls, as reduced by BOPTA, is $1,203,197, with $1,070,900 allocated to the improvements and $132,297 to the land. Evans stated at the

beginning of trial that he would accept the current land RMV of $132,297, leaving only the value of the improvement (*i.e.* the home) in dispute.

A.      *Plaintiff's valuation*

In its sales comparison approach, Plaintiff provided nine comparable sales. (Ptf's Exs 1 – 10.) Evans testified that the sale dates range from December 2007 to January 2011, with prices on a per square-foot basis ranging from $60 to $178. (*See id*.) The comparable sales were located in both Eugene and Springfield and were spread amongst at least five different subdivisions. (Ptf's Exs 1– 9.) One of the comparable sales was a class 5 property, one was class 5+, six were class 6, and one was a class 7. (*Id.*) The subject property is a class 7. (Def's Ex B at 1.)

In arriving at its value estimate, Plaintiff calculated a per square-foot value for the improvements of each comparable sale by dividing the percentage of each of the properties' 2010 *improvements* RMV on the assessment and tax rolls by each properties' 2010 *total* RMV on the rolls. (*See* Ptf's Ex 1 at Summary.) The resulting percentage was then applied to the sales price of each comparable to determine the portion of the sales price theoretically attributable to the improvements. (*Id*.) Using those estimated "improvements" sale prices, Plaintiff then calculated the per square-foot value of the improvements. (*Id*.) Plaintiff then averaged those prices per square-foot to arrive at its requested value per square-foot of $142.[1] (*Id*.)

Plaintiff's comparable sale 3, the only class 7 comparable sale (the subject property is also a class 7), was "trend[ed] down" because it was "gated." (*Id*.) Plaintiff's comparable sale 9 was "trend[ed] down" due to its additional "shop-living area." (*Id*.) Plaintiff's comparable sale

---

[1] For ease of presentation, Plaintiff referred to the price per square-foot as the rounded figure $142. However, in calculating its requested value, Plaintiff did not use the rounded figure. (*See* Ptf's Ex 1 at Summary.) The court also uses the non-rounded figure for its calculations.

1 is a property that was conveyed from River Valley to Plaintiff on September 19, 2008, for $507,000, and then sold by Plaintiff roughly 21 months later (June 2010) for $607,000. (Ptf's Ex 1 at A.)

Plaintiff also submitted sales comparison data comprised of "2011 Rural Acreage & House" sales, as well as 2012 roll values for 14 properties in the "Diamond Ridge" subdivision. (Ptf's Exs 13,14.) At trial, Evans admitted that "you can't use county roll values, but the difference [in price] is drastic."

Plaintiff contends that Defendant's classification of the property is erroneous, and that the proper price per square-foot for the improvements is $142, or $588,563 total.[2] (*Id.*)

At trial, Krehbiel argued that the percentage used for Plaintiff's improvement value is not appropriate because it could possibly be premised upon adjudicated values or sales that are not arm's-length. Krehbiel also argued that Plaintiff's purchase price does not accurately portray the RMV because of the ongoing close relationship between Plaintiff and River Valley, the builder and seller of the subject property. He noted that the list price for Plaintiff's home, as advertised by River Valley, was $1,600,000, but that Plaintiff bought the home for $763,800. (*See* Def's Ex I.) The parties acknowledged that the home had been on the market for more than a year when Plaintiff purchased it. Krehbiel also questioned whether the property was adequately exposed to the market during the time it was for sale, testifying that he could not find any MLS listing for the home (referring to the Multiple Listing Service). Testimony indicated that the marketing of the home was limited to the builder's website, Tour of Homes marketing, and an

/ / /

---

[2] In its calculation, Plaintiff relies on a square-footage of 4,132. Defendant measured the home and determined that it was 4,233 square feet. That would increase Plaintiff's value estimate approximately $14,385 to $602,949 (rounded).

Internet website known as "Zillow." Finally, Krehbiel pointed out that Plaintiff's 2011 comparable sales occurred more than a year after the January 1, 2010, assessment date.

B.    *Defendant's valuation*

In Defendant's sales comparison approach, it examined eight different properties in Eugene and Springfield; seven were sales, and one was an active listing. (Def's Exs K – S.) All eight were in the class 6 category (either a straight class 6, 6-, or 6+). (Def's Ex K.) The homes were all built between the 1984 and 2008, ranging in size from 3,074 square-feet on the low end to 6,391 square-feet on the high end, on lots very similar in size to the subject property (between five and 7.2 acres), selling between December 5, 2007, and November 8, 2011. (*Id.*) However, removing the earliest and latest sales, the remaining six sold between September 10, 2009, and May 7, 2010. Six of Defendant's seven comparables sold for prices at or above $1 million. (*Id.*) The sale prices ranged from a low of $156 per square-foot to a high of $330 per square-foot, with two selling for $280 per square-foot and a third for $283 per square-foot. (*Id.*)

At trial, Krehbiel testified that Defendant's best comparable was  sale 2, located at 2040 W 34th Ave, Eugene, Oregon (best comparable). It was the best due to several factors: the price per square-foot equaled the average price per square-foot of Defendant's comparable sales (based on both the mode and mean), the square-footage (4,291) was close to that of the subject property, and the bath count and acreage (5.01 acre) were also similar. (*See id.*) That property was approximately seven years older than the subject property, having been built in 2002. (*Id.*) However, it sold for $1.2 million on December 3, 2009, which is only roughly one month before the applicable January 1, 2010, assessment date for the year under appeal (2010-11). Krehbiel testified that while the data could support a much higher value, the subject property was

/ / /

admittedly difficult to value, and he was therefore only requesting that the court uphold the values as determined by BOPTA.

## II. ANALYSIS

"RMV is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). RMV is defined by statute as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1).[3] "Real market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *." ORS 308.205(2).

The Department of Revenue promulgated OAR 150-308.205-(A)(2)(a), which states: "For the valuation of real property all three approaches – sales comparison approach, cost approach, and income approach – must be considered. For a particular property, it may be that all three approaches cannot be applied, however, each must be investigated for its merit in each specific appraisal."

"A preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. In this case, Plaintiff seeks relief and thus bears the burden of proof. This court has previously stated that "preponderance" means "the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530, WL 914208 at *2 (July 12, 2001) (citing *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971)). In cases where the RMV of a property is at issue, as here, "it is not enough for

---

[3] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2009.

a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.* (*Poddar*), 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002)). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents and licensed brokers." *Toy Box Maxi-Storage LLC v. Jackson County Assessor*, TC-MD No 110339C, WL 1958943 at *3 (May 31, 2012).

Because the subject property is not an income producing property, the income approach is inapplicable. Neither party considered the cost approach, although it may be relevant; both parties relied solely on the sales comparison approach.

In a case such as the Plaintiff's, "the comparable sales approach 'may be used to value improved properties, vacant land, or land being considered as though vacant.' " *Chambers Management Corp v. Lane County Assessor,* TC-MD No 060354D at 6 (Apr 3, 2007) (citing Appraisal Institute, *The Appraisal of Real Estate* 335 (12th ed 2001)). "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject property, or *adjusted to be comparable,* will be used." OAR 150-308.205-(A)(2)(c) (emphasis added).

Plaintiff used nine comparable sales with sale dates ranging from December 2007 to January 2011; Plaintiff did not make adjustments for time. Plaintiff did not make adjustments for location, or explain why no adjustment was necessary. Evans, who appeared for Plaintiff, did not profess to be qualified in valuing property, although he clearly possesses some knowledge of property valuation, albeit somewhat generalized and over simplistic. Plaintiff also contended

/ / /

that the subject property was erroneously classified, but did not adequately demonstrate that a lesser classification was appropriate.

Plaintiff must carry its burden of proof by providing "competent evidence" that includes "appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences," rather than simply "criticiz[ing] a county's position." *Poddar*, 18 OTR at 332; *Toy Box Maxi-Storage LLC*, TC-MD No 110339C. Accordingly, the court is not persuaded by Plaintiff's evidence; Plaintiff has failed to carry its burden of proof.

The legislature, however, has given the court jurisdiction "to determine the real market value or correct valuation on the basis of the evidence before [it], without regard to the values pleaded by the parties." ORS 305.412. To do that, the court needs reliable data. Plaintiff's evidence is unrefined and presents an unclear picture. Defendant's comparable sales data is equally unreliable and not adjusted consistent with standard appraisal methodology. Defendant's best comparable (comparable 2) was similar to the subject property in size (in terms of both the square footage of the home and the lot), and bath count. (*See* Def's Ex K.) That property sold less than one month before the applicable assessment date for $1,200,000, compared to the BOPTA adjusted RMV of $1,203,197. That property strikes the court is quite similar to the subject property. Given no better evidence and coupled with Defendant's request that the court sustain the BOPTA RMV, the court concludes that the value on the rolls, as adjusted by BOPTA, should be sustained.

With regard to the sales comparison approach, Plaintiffs failed to carry their burden of proof and Defendant's sales comparison data does not support a change to the tax roll.

/ / /

/ / /

## III. CONCLUSION

After careful review of the testimony and evidence, the court concludes that Plaintiff did not meet its burden of proof by demonstrating by a preponderance of the evidence that a reduction in RMV was warranted. The evidence, in sum, is not sufficient for the court to make its own determination of the subject property's RMV. Accordingly, the court finds that the current roll values, as determined by BOPTA for tax year 2010-11, should be sustained. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of October 2012.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on October 4, 2012. The Court filed and entered this document on October 4, 2012.*